Alan Alexander Beck
Law Office of Alan Beck
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
Alan.alexander.beck@gmail.com

Richard L. Holcomb
Holcomb Law, LLLC
733 Bishop St
Suite 1478
Honolulu, HI 96813
(808) 545-4040
Hawaii Bar No. 9177
rholcomblaw@gmail.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RODNEY PAGBA | |
| | Civil Action No. 22-00521-JMS-KJM |
| Plaintiffs, | |
| | FIRST AMENDED |
| v. | VERIFIED COMPLAINT |
| | FOR DECLARATORY |
| ANNE E. LOPEZ, in her official capacity as Attorney General of the State of Hawaiʻi, | AND INJUNCTIVE RELIEF; EXHIBITS |
| | THROUGH THREE; |
| and | VERIFICATION OF |
| | COMPLAINT |
| CITY AND COUNTY OF HONOLULU, | |
| Defendants. | |

# FIRST AMENDED VERIFIED COMPLAINT
# FOR DECLARATORY AND INJUNCTIVE RELIEF

COMES NOW the Plaintiff, Rodney Pagba ("Pagba"), by and through his undersigned counsel, and complains of the Defendants as follows:

## I.    PARTIES

1. Plaintiff Pagba is an adult male resident of the State of Hawaii, resides in the City and County of Honolulu, and is a citizen of the United States.

2. Defendant Anne E. Lopez is the Attorney General of Hawai'i. She is the chief law enforcement officer of Hawai'i. Pursuant to Section 26-7 of the Hawai'i Revised Statutes, Defendant Lopez has "the ultimate responsibility for enforcing penal laws of statewide application." *Amemiya v. Sapienza*, 63 Haw. 424, 427, 629 P.2d 1126, 1129 (1981). The Department of the Attorney General, which Ms. Lopez directs, "administer[s] and render[s] state legal services, including furnishing of written legal opinions to the governor, legislature, and such state departments and officers as the governor may direct," including the restrictions complained of herein. Haw. Rev. Stat. Ann. § 26-7 (West). She is sued in her official capacity.

3. Defendant City and County of Honolulu ("City") is a municipal corporation incorporated under the laws of the State of Hawaii. The City is authorized by law to control and maintain the Honolulu Police Department

1

("HPD"), an agency of the City, who acts on the City's behalf in the area of law enforcement and, as applicable here, the issuance or denial of firearms permits. The City is therefore ultimately responsible for the HPD and its actions, and therefore, must assume the risks incidental to the maintenance of HPD, its employees, laws, customs and policies.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## III. STATEMENT OF FACTS

6. On April 6, 1988, Mr. Pagba was convicted of the misdemeanor crime of Assault in the Third Degree. A true and correct copy of Mr. Pagba's "public rap sheet" obtained from Hawaii's Criminal Justice Data Center is attached hereto as **Exhibit One**.

7. The conviction resulted from an argument between Mr. Pagba and his longtime acquaintance, Bradley Tomas. No violence was involved. Indeed, no blows were thrown. Instead, Mr. Pagba believed that the acquaintance was going to strike Mr. Pagba, Mr. Pagba attempted to protect himself by raising his arms and preventing the acquaintance from exiting his truck. This action resulted in Mr. Tomas being shoved. According to Mr. Tomas, this occurred after both had

"somehow" fallen on the ground when Mr. Tomas attempted to exit his truck. **Exhibit Three**, Declaration of Bradley Tomas.

8. The facts of Mr. Pagba's case did not meet the elements of Assault in the Third Degree. *See e.g. State v. Kupau*, 63 Haw. 1, 2, 620 P.2d 250, 251 (1980) ("As a result of Turner's testimony of no bodily injury from the blow, the prosecution midway through its case in chief, moved to amend the charge from assault in the third degree to harassment.").

9. Mr. Pagba did not understand the elements of the crime in 1988. Mr.Pagba was advised by counsel to plead guilty to the crime because the punishment would be limited to 10 hours community service and a $25 fine.

10. Mr. Pagba and Mr. Tomas are not related. Mr. Tomas and Mr. Pagba never lived in the same household. At no point were Mr. Pagba and Mr. Tomas involved in any domestic relationship as contemplated by HRS § 706-906, 18 U.S.C. § 921(a)(33)(A)(ii) or otherwise.

11. Therefore, neither 18 U.S.C. § 922(g)(9) (the "Lautenberg Amendment") nor HRS § 134-7 apply to Mr. Pagba.

12. The Hawaii State courts have recently informed Mr. Pagba that no records exist pertaining to this 1988 conviction. Prior to the filing of this lawsuit, the CJIS report, attached as **Exhibit One**, was the only official record that Mr. Pagba was able to obtain that pertains to this incident.

13. Prior to purchasing a handgun in Hawai'i, all persons must apply for a permit to acquire. *See* H.R.S. §134-2.

14. On November 9, 2022, Mr. Pagba applied for a permit to acquire pursuant to HRS § 134-2.

15. Mr. Pagba's application was denied.

16. By letter dated December 1, 2022, Mr. Pagba was informed that he was "disqualified" from owning a firearm and ammunition due to his 1988 misdemeanor conviction for Assault in the Third Degree. A true and correct copy of the letter denying Mr. Pagba's application is attached hereto as **Exhibit Two**.

17. In the letter, Mr. Pagba was informed that he must surrender any firearms, permit, or ammunition within 30 days of the letter. **Exhibit Two**.

18. Mr. Pagba was further informed that "[f]or any future applications," Mr. Pagba would have to produce proof that his 1988 misdemeanor conviction was expunged or pardoned. **Exhibit Two**.

19. Expungement is not available to Mr. Pagba because he was convicted. HRS § 831-3.2.

20. Moreover, Mr. Pagba is not required to obtain the exceptional relief of a gubernatorial pardon before exercising his constitutional rights to keep and bear arms.

21. The Governor of Hawaii has unbridled discretion in whether to issue

a pardon.

22.  The exercise of a fundamental right cannot depend on the unbridled discretion of a government official. *See New York State Rifle & Pistol Ass'n, Inc.v. Bruen,* ___U.S. ___, 142 S. Ct. 2111, 2138 (2022) ("And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing officials, rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,'") (citations omitted); *Fisher v. Kealoha*, 855 F.3d 1067, 1072 (9th Cir. 2017) (J. Kozinski, "ruminating") (Hawai'i governors' "unbounded discretion sits in uneasy tension with how rights function. A right is a check on state power, a check that loses its force when it exists at the mercy of the state. Government whim is the last refuge of a precarious right. And while Fisher's case gives us no occasion to seek better refuge, others will.").

23.  It is a Class C Felony in the State of Hawaii for a person who has been convicted of a "crime of violence" to own, acquire, or possess a firearm:

> (b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.
> \*\*\*\*
> (g) Any person disqualified from ownership, possession, control, or the right to transfer ownership of firearms and

5

ammunition under this section shall surrender or dispose of all firearms and ammunition in compliance with section §134-7.3.

(h) Any person violating subsection (a) or (b) shall be guilty of a class C felony; provided that any felon violating subsection (b) shall be guilty of a class B felony. Any person violating subsection (c), (d), (e), (f), or (g) shall be guilty of a misdemeanor.

H.R.S. §134-7, emphasis added.

24. "Crime of violence" is statutorily defined as:

'Crime of violence' means any offense, as defined in title 37, that involves injury or threat of injury to the person of another, including sexual assault in the fourth degree under section 707-733 and harassment by stalking under section 711-1106.5.

Haw. Rev. Stat. Ann. § 134-1 (West)

25. The law prohibiting Assault in the Third Degree has remained unchanged from at least 1984:

    a. A person commits the offense of assault in the third degree if the person:

        i. Intentionally, knowingly, or recklessly causes bodily injury to another person; or

        ii. Negligently causes bodily injury to another person with a dangerous instrument.

    b. Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

Haw. Rev. Stat. Ann. § 707-712 (West).

26. Assault in the Third Degree is the least serious criminal charge for

assault in the State of Hawai'i. *See* HRS § 707-710 (assault in the first degree includes serious bodily injury or victims over 60 years old and is a Class B felony); HRS § 707-711 (Class C felony to, *inter. alia*., cause bodily injury with dangerous instrument or cause substantial bodily injury).

27. Assault in the Third Degree has always been a misdemeanor in the State of Hawai'i. *State v. Swain*, 61 Haw. 173, 176, 599 P.2d 282, 283 (1979) ("The offense of which the defendant was convicted on the facts was a misdemeanor, punishable by imprisonment for not more than one year.").

28. Convictions for Assault in the Third Degree in Hawai'i do not extinguish the constitutional right to keep and bear arms.

29. Mr. Pagba's conviction for Assault in the Third Degree does not extinguish Mr. Pagba's constitutional right to keep and bear arms.

30. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

31. The Second Amendment guarantees individuals a fundamental right to keep and carry arms for self-defense and defense of others in the event of a violent confrontation. *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts*, 577 U.S. 1027 (2016).

32. Handguns are protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

33. The "disqualification" of Mr. Pagba from ownership of firearms based on the 1988 Assault in the Third Degree violates Mr. Pagba's Second Amendment rights.

34. Prior to the Supreme Court's opinion in *Bruen*, the Ninth Circuit "along with the majority of our sister circuits, has adopted a two-step inquiry in deciding Second Amendment cases: first, the court asks whether the challenged law burdens conduct protected by the Second Amendment; and if so, the court must then apply the appropriate level of scrutiny." *See Silvester v. Harris*, 843 F.3d 816, 820-821 (9th Cir. 2016).

35. "In the first step, we ask 'whether the challenged law burdens conduct protected by the Second Amendment,' based on a 'historical understanding of the scope of the [Second Amendment] right,' *Heller*, 554 U.S. at 625, or whether the challenged law falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected,'" *See Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014).

36. If the challenge survives the first step (and prior to *Bruen*, *supra*.) courts would determine whether to apply strict scrutiny or intermediate scrutiny to justify the government's conduct.

37. "In ascertaining the proper level of scrutiny, the court [would] consider:

(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right." *Jackson* 746 F.3d at 960-61. "The result is a sliding scale. A law that imposes such a severe restriction on the fundamental right of self-defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny." *Jackson*, 746 F.3d at 961.

38. The "disqualification" of Mr. Pagba from firearms ownership undeniably burdens rights protected by the Second Amendment.

39. Pursuant to Ninth Circuit precedent those convicted of [actually] violent misdemeanors have Second Amendment rights. *See United States v. Chovan*, 735 F.3d 1127, 1137 (9th Cir. 2013) ("[W]e conclude that by prohibiting domestic violence misdemeanants from possessing firearms, § 922(g)(9) burdens rights protected by the Second Amendment."); *Fisher v. Kealoha*, 855 F.3d 1067, 1070 (9th Cir. 2017) ("We have previously determined that section 922(g)(9) burdens conduct protected by the Second Amendment and upheld its constitutionality, facially and as-applied, under intermediate scrutiny …").

40. These cases are still authoritative for determining whether a prohibition burdens the Second Amendment post-*Bruen*. *Oregon Firearms*

*Federation, Inc., et. al. v. Katherine "Kate" Brown, et. al.*, No. 2:22-CV-01815-IM, 2022 WL 17454829, at *7, n. 9 (D. Or. Dec. 6, 2022) ("To the extent that the first step of a court's pre-*Bruen* analysis mirrors the first step of a court's post-*Bruen* analysis, these cases remain persuasive authority on whether the Second Amendment protects large-capacity magazines.").

41. The Ninth Circuit's finding that even violent misdemeanants retain Second Amendment rights is in accord with other Circuits.

42. For example, in *Binderup v. AG of United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*), the Third Circuit found that the federal ban on possession of firearms by those convicted of felonies and misdemeanors which carry a sentence of over two years, codified at 18 U.S.C. § 922(g)(1), was unconstitutional as applied to the challengers because their state conviction(s) was for nonserious misdemeanors. *Binderup v. AG of United States*, 836 F.3d 336, 339 (3d Cir. 2016).

43. Similarly, in rejecting a facial challenge to 18 U.S.C. 922(g)(1) the D.C. Circuit Court has also expressly found violent misdemeanants have Second Amendment right and strongly suggested that the Court would have ruled in favor of the challenger had he brought an as applied challenge:

> At several points in their briefs, plaintiffs appear to go beyond their argument that section 922(g)(1) is unconstitutional as applied to common-law misdemeanants as a class and claim that the statute is invalid as applied to Schrader specifically. Were this argument properly before us, *Heller* might well dictate a different outcome. According to the complaint's allegations, Schrader's offense

> occurred over forty years ago and involved only a fistfight. Second Am. Compl.¶ 10. Schrader received no jail time, served honorably in Vietnam, and, except for a single traffic violation, has had no encounter with the law since then. *Id*. ¶¶ 11-12. To the extent that these allegations are true, we would hesitate to find Schrader outside the class of "law- abiding, responsible citizens" whose possession of firearms is, under *Heller*, protected by the Second Amendment.

*Schrader v. Holder*, 403 U.S. App. D.C. 284, 295, 704 F.3d 980, 991 (2013).

44. Other disqualifying facts have also been reviewed on an as-applied basis. For example, in *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016), the 6th Circuit also found 18 U.S.C. § 922(g)(4) unconstitutional as applied the litigant where the litigant had been committed to a mental institution for less than thirty days 28 years prior.

45. Here, Mr. Pagba brings only an as applied challenge to the Hawaii statutory scheme which prohibits him from owning a firearm.

46. The "disqualification" of Mr. Pagba from his right to keep and bear arms based on a thirty-five-year-old conviction for Assault in the Third Degree based on the facts of Mr. Pagba's case would not have even survived intermediate scrutiny. *Compare Chovan*, 735 F.3d at 1140 (applying intermediate scrutiny to uphold the federal ban on domestic violence offenders from possession firearms).

47. Indeed, the "disqualification" of Mr. Pagba from firearms ownership is a destruction of the Second Amendment right and would have survived no level of scrutiny. *See Wesson v. Town of Salisbury*, 13 F. Supp.3d 171 (D. Mass. 2014)

11

(decades old marijuana conviction did not bar Plaintiffs from possessing firearm in home); *Richmond v. Peraino*, 128 F. Supp. 3d 415 (D. Mass. 2015) (same).

48. Moreover, whether strict scrutiny or intermediate scrutiny would have been applied, the "disqualification" of Mr. Pagba is "neither 'substantially related' nor 'narrowly tailored' to [the government's] interests." *Fotoudis v. City & County of Honolulu*, 54 F. Supp. 3d 1136, 1144 (D. Haw. 2014).

49. Following *Bruen*, however, where a challenged law burdens conduct protected by the Second Amendment, courts no longer apply a suitable level of means-end scrutiny. Instead:

> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Bruen*, 142 S. Ct. at 2130.

50. The first step of the analysis remains unchanged by *Bruen*, *i.e.*, courts must determine whether the Second Amendment right is burdened by the regulation or, stated otherwise, whether the conduct is protected by the plain text of the Second Amendment. "To the extent that the first step of a court's pre-*Bruen* analysis mirrors the first step of a court's post-*Bruen* analysis, these cases remain persuasive authority." *Or. Firearms Fed'n, Inc. v. Brown*, No. 2:22-cv-01815-IM, 2022 U.S. Dist. LEXIS 219391, at *17 n.9 (D. Or. Dec. 6, 2022). Pursuant

to *Chovan*, *supra*., Mr. Pagba's second amendment rights are burdened.

51. Second, because "the Constitution presumptively protects [individual conduct" covered by 'the Second Amendment's plain text," *Bruen*, 142 S.Ct. at 2126, "the Government 'must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.' " *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023) (citation omitted) (overturning conviction for violation of 18 U.S.C. § 922(g)(8) for Defendant who was involved in five shootings from December 2020 through January 2021); *United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) ("Next, the Government must justify its regulation through a historical analysis. To do so, the Government's historical inquiry must show that § 922(n) is consistent with the historical understanding of the Second Amendment."); *Firearms Pol'y Coal., Inc. v. McCraw*, No. 4:21-CV-1245-P, 2022 WL 3656996, at *8 (N.D. Tex. Aug. 25, 2022) ("The burden therefore falls on Texas to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."); *United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457, at *3 (S.D.W. Va. Oct. 12, 2022) (if the statute burdens conduct protected by the Second Amendment, "the statute is presumptively

unconstitutional unless the Government can show that 'it is consistent with the Nation's historical tradition of firearm regulation.' This analysis is constrained by the Supreme Court's definition of 'historical tradition' as the time of the founding and ratification of the Second Amendment in 1791.") (citations omitted).

52. Here, the government cannot meet its burden of showing that the "disqualification" of Mr. Pagba is consistent with the historical tradition of firearms regulation. Mr. Pagba's conduct that resulted in the conviction amounts to less than a fist fight. *See United States v. Lisson Antonio Perez- Gallan*, No. PE:22-CR- 00427-DC, 2022 WL 16858516, ___F. Supp.  (W.D. Tex. Nov. 10, 2022) (striking 18 U.S.C. § 922(g)(8) following review of historical punishments for domestic assault, none of which involved restrictions on firearms); *Compare Schrader v. Holder*, 704 F.3d 980, 985 (D.C. Cir. 2013) (upholding denial of permit under 18 U.S.C. § 922(g)(1) where common law charge of "assault" included all forms of assault and an "infinite variety of fact patterns.").

53. Defendant City and County of Honolulu via the chief of police executes the offending provisions of law and makes decisions as to which citizens are "disqualified" from enjoying Second Amendment rights and for what reasons. *See Young v. State of Hawaii*, 992 F.3d 765, 779 (9th Cir. 2021) ("A facial challenge is a claim that the legislature has violated the Constitution, while an as-

applied challenge is a claim directed at the execution of the law.").

54. Hawaii vests the power to issue permits to acquire to the appropriate police chief. Pursuant to H.R.S. §134-2, a person cannot obtain a firearm within the state without first obtaining a permit from the chief of police in the county in which they reside.

55. The decision to issue the permit is discretionary and that discretion rests solely with the police chief. "The chief of police of the respective counties <u>may</u> issue permits to acquire firearms … " *Id*. (emphasis added).

56. The Chief, acting in his official capacity, is the same entity as the City. *See Young v. Hawaii*, 548 F. Supp. 2d 1151, 1164 (D. Haw. 2008) ("The claims asserted against Defendants Harry Kim and Lawrence K. Mahuna in their official capacities duplicate the claims asserted against the County of Hawaii.").

57. Defendant City and County of Honolulu is liable because of its "express incorporation and adoption of state law and policy." *Wong v. City & Cty. of Honolulu*, 333 F. Supp. 2d 942, 951 (D. Haw. 2004).

58. Based on the 1988 conviction for Assault in the Third Degree, Defendant City and County of Honolulu via the chief of police decided to "disqualify" Mr. Pagba from acquiring a firearm.

59. Mr. Pagba was born and raised on the island of Oahu.

60. Mr. Pagba is currently employed as a glazier.

61. Other than the 1988 Assault in the Third Degree conviction, Mr. Pagba has never been convicted of a crime that would disqualify him from firearms ownership.

62. Mr. Pagba has never been diagnosed with a mental disorder that would disqualify him from firearms ownership under Hawaii or federal law.

63. Mr. Pagba does not take illegal drugs or abuse alcohol.

## COUNT I
## U.S. CONST., AMEND. II

64. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

65. Hawaii State law that prohibits possession of firearms by Mr. Pagba violates Mr. Pagba's Second Amendment rights.

66. There is no historical justification for depriving an otherwise law-abiding citizen from firearms ownership based on a 35-year-old conviction resulting from an altercation that was less serious than even a fist fight.

67. Defendants' policy of criminalizing the possession of firearms by Plaintiff violates his Second Amendment rights.

68. Section 134-7 of the Hawai'i Revised Statutes is unconstitutional as applied to Plaintiff insofar as it is applied to "disqualify" Plaintiff from exercise of his Second Amendment rights based on the 1988 Assault in the Third

Degree conviction.

## COUNT II (DECLARATORY JUDGMENT)

69. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

70. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

71. Absent a declaratory judgment, there is a substantial likelihood that Plaintiff will suffer irreparable injury in the future.

72. There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

73. This Court possesses an independent basis for jurisdiction over the parties.

74. A judgment declaring that Defendants' laws and policies which deny Plaintiff the right to own, possess and acquire firearms is unconstitutional as applied to him.

75. Alternatively, a declaration that H.R.S. §134-7 is unconstitutional as applied to Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that judgment be entered in his favor and against Defendant as follows:

1. An order preliminarily and permanently enjoining Defendant(s), their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing H.R.S. §134-7 as applied to Mr. Pagba.

2. Plaintiff requests this Court enjoin Defendants from prohibiting him from owning a firearm and/or immediately issue him a permit to acquire a firearm.

3. Plaintiff requests this Court, enjoin H.R.S. §134-7 and any other relevant provision of the H.R.S. as applied to him.

4. Declaratory relief that H.R.S. §134-7 and any other relevant provision of the H.R.S. is unconstitutional as applied to him.

5. Nominal Damages against Defendant City and County of Honolulu only.

6. Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. §1988;

7. Such other relief consistent with the injunction as appropriate; and

8. Such other further relief as the Court deems just and appropriate.

DATED:  Honolulu, Hawaii; February 19, 2023.

Respectfully submitted,

/s/ Alan Beck
Alan Alexander Beck Counsel for Plaintiff
2692 Harcourt Drive
San Diego, CA 92123
(619) 905-9105
Hawaii Bar No. 9145
alan.alexander.beck@gmail.com


/s/ Richard Holcomb
Richard L. Holcomb
Holcomb Law, LLLC
733 Bishop St
Suite 1478
Honolulu, HI  96813
(808) 545-4040
Hawaii Bar No. 9177
rholcomblaw@gmail.com